Allison C. Eckstrom, California Bar No. 217255
Christopher J. Archibald, California Bar No. 253075
Sharlene Meno, California Bar No. 317181
Bernice E. Diaz, California Bar No. 329246
**BRYAN CAVE LEIGHTON PAISNER LLP**
3161 Michelson Drive, Suite 1500
Irvine, California  92612-4414
Telephone:	(949) 223-7000
Facsimile:	(949) 223-7100
E-Mail:	allison.eckstrom@bclplaw.com
	christopher.archibald@bclplaw.com
	sharlene.meno@bclplaw.com
	bernice.diaz@bclplaw.com

Attorneys for Defendant
WALGREEN CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| KENNETH PRESIDENT, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN CO., an Illinois corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>(Santa Clara County Superior Court Case No. 20CV368984)<br><br>**DEFENDANT WALGREEN CO.'S NOTICE OF REMOVAL**<br><br>**[CAFA JURISDICTION]** |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Walgreen Co. ("Defendant") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California under the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, on the grounds that: (1) Plaintiff Kenneth President ("Plaintiff") is a "citizen of a State different from" Defendant; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs;" and (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100.

## PROCEDURAL BACKGROUND

1.  On August 3, 2020, Plaintiff commenced a class-action lawsuit against Defendant in the Superior Court of the State of California for the County of Santa Clara, entitled "*Kenneth President, on behalf of himself, all others similarly situated, Plaintiff vs. Walgreen Co., an Illinois corporation; and Does 1 through 50, inclusive, Defendants*," Case No. 20CV368984.

2.  On August 18, 2020, Plaintiff served Defendant's agent for service of process, Corporation Service Company, with the following documents: (a) Summons; (b) Class Action Complaint; (c) Civil Case Cover Sheet; and (d) Civil Lawsuit Notice. A true and correct copy of the Summons is attached hereto as "**Exhibit 1**." A true and correct copy of the Class Action Complaint is attached hereto as "**Exhibit 2**." A true and correct copy of the Civil Case Cover Sheet is attached hereto as "**Exhibit 3**." A true and correct copy of the Civil Lawsuit Notice is attached hereto as "**Exhibit 4**."

3.  On September 15, 2020, Defendant filed its Answer to Plaintiff's Class Action Complaint, a true and correct copy of which is attached hereto as "**Exhibit 5**."

4.  Exhibits 1 through 5 to this Notice of Removal constitute all pleadings, process and orders served in this action at the time of removal.

5. Plaintiff's Complaint defines the putative class as: "All persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the Relevant Time Period." (Complaint, ¶ 10.) The Complaint defines the "Relevant Time Period" as the time period beginning four years before the filing of the action until judgment is entered. (*Id.*)

6. Plaintiff alleges the following causes of action against Defendant on behalf of himself and the putative class: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Hourly and Overtime Wages; (4) Failure to Indemnify; (5) Failure to Provide Accurate Written Wage Statements; (6) Failure to Timely Pay All Final Wages; and (7) Unfair Competition.

## **REMOVAL IS TIMELY**

7. A case may be removed at any time, provided that neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

8. 28 U.S.C. § 1446(b)(1) provides that, "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."

9. "[N]otice of removability under § 1446(b)(1) is determined through examination of the four corners of the applicable pleadings[.]" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The Complaint does not "reveal on its face the facts necessary for federal court jurisdiction." *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (quoting *Harris*, 425 F.3d at 691–92). Specifically, it does not reveal on its face that the amount in controversy exceeds $75,000 for traditional diversity purposes, or that the amount in controversy exceeds $5,000,000 for CAFA removal purposes.

10. Plaintiff also never served Defendant with an "other paper" sufficient to trigger the second 30-day clock. 28 U.S.C. § 1446(b)(3). Indeed, Plaintiff has not served Defendant with any documents other than those attached to this Notice of Removal.

11. Therefore, because neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered, removal is timely.

12. Nonetheless, Defendant also removed this action within 30 days of being served, so removal is timely.

## JURISDICTION

## PLAINTIFF'S COMPLAINT IS SUBJECT TO REMOVAL UNDER CAFA

13. The Court has original jurisdiction over this action pursuant to CAFA. As such, this action may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453.

14. Under CAFA, the federal district court has jurisdiction if:

    a) There are at least 100 class members in all proposed plaintiff classes; and

    b) The combined claims of all class members exceed $5 million exclusive of interest and costs; and

    c) Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

### A. The Diversity Of Citizenship Requirement Is Satisfied

15. **Plaintiff is A Citizen of California**. A person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that he is a California resident. (Complaint, ¶ 5.) He claims that he worked for Defendant from approximately June 9, 2014 to July 31, 2019. (Complaint, ¶ 18.) Throughout his employment with Defendant, Plaintiff was employed at Defendant's store located at 1800 W. Slauson Ave., Los Angeles, California 90047. (Declaration of Alicia Musgrove ("Musgrove Decl."), ¶ 2.) At

all times, Plaintiff maintained a residential address in Long Beach, California. (*Id*.) Therefore, Plaintiff resided in California at the time the action was commenced and intended to remain there. As such, Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of California.

16. **Defendant is a Citizen of Illinois**. At the time of the filing of this action, Defendant was, and still is, a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois. (Declaration of Joseph Amsbary ("Amsbary Decl."), ¶ 2.)

17. Pursuant to 28 U.S.C. § 1332(c), a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. The Supreme Court has established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). The Court held that the "'principal place of business' [as set forth in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 92-93. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id*. at 93; see also *Montrose Chemical v. American Motorists Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997) (holding that a corporation's principal place of business is the state in which it performs a substantial predominance of its corporate operations and, when no state contains a substantial predominance of the corporation's business activities, then the corporation's principal place of business is the state in which the corporation performs its executive and administrative functions.)

18. Defendant's corporate headquarters are located in Deerfield, Illinois where its officers direct, control and coordinate Defendant's activities. (Amsbary Decl., ¶ 2.) Defendant's operations are managed from this location, including, but not limited to, those operations relating to administering company-wide policies and procedures, legal affairs, and general business operations. (*Id.*)

19. Thus, for diversity purposes, Defendant is a citizen of Illinois.

20. **The Citizenship of "Doe Defendants" Must Be Disregarded.** The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a).

21. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizenship of at least one putative class member is diverse from the citizenship of at least one defendant. 28 U.S.C. § 1332(d)(2)(A). Plaintiff, a putative class member, is a citizen of California. (Musgrove Decl., ¶ 2; Complaint, ¶ 5.) Defendant is a citizen of Illinois. (Amsbary Decl., ¶ 2.) The citizenship of "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1). Therefore, the requisite minimal diversity exists between the parties.

### B. There Are At Least 100 Class Members in the Proposed Class

22. Plaintiff purports to bring this action on behalf of: "All persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the Relevant Time Period." (Complaint, ¶ 10.)

23. Defendant denies Plaintiff's claims and makes no admission by way of this removal.

24. Based on the putative class as defined in the Complaint, more than 100 individuals fall within the putative class. (Musgrove Decl., ¶ 3.) Specifically, there are 14,494 individuals currently employed by Defendant, who, during the proposed class period, held the position of Customer Service Associates ("CSA"), the position held by Plaintiff. (*Id.*)

### C. The Requisite $5 Million Amount In Controversy Is Satisfied[1]

25. Based on the allegations in the Complaint, the alleged amount in controversy easily exceeds, in the aggregate, $5 million.

---

[1] In alleging the amount in controversy for purposes of CAFA removal, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does Defendant concede that any or all of the putative class members are entitled to any recovery in this case, or are appropriately included in the putative class.

### a. Unpaid Wages

26. Plaintiff alleges that, "Plaintiff and the putative class were trained to clock in for each work shift using the computer. Plaintiff and the putative class were required to wait for it to load. It generally took approximately five to ten minutes for it to boot up to clock in." (Complaint, ¶ 25.) Plaintiff further alleges that the putative class had to walk a different department in the store to clock in, so "by the time Plaintiff and the putative class logged into the computer to clock in, fifteen minutes or more may have already passed – all of which were not properly recorded as time worked and which resulted in Plaintiff and the putative class not being paid for all hours worked by Defendants." (Complaint, ¶ 27). Plaintiff defines the Hourly Employee Class as all persons employed by Defendants and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California since August 3, 2016. (Complaint, ¶ 10.) He seeks to recover the amount of allegedly unpaid wages. The statute of limitations for Plaintiff's unpaid hourly and overtime wages claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for the unpaid hourly and overtime wages claim is based on a four-year limitations period.

27. Defendant denies that it failed to pay Plaintiff or any member of the putative class hourly wages or overtime wages, and further denies that any wages are due and owing to Plaintiff and the putative class members. However, because Plaintiff alleges that it took between five and ten minutes for the computer to load during each shift, and that fifteen minutes or more had already passed by the time Plaintiff and the putative class clocked in for work, Defendant is entitled to include the minimum amount alleged by Plaintiff (*i.e.*, five (5) minutes) as unpaid wages during each shift worked by the putative class in calculating the amount in controversy.

28. Although Plaintiff defines the putative class broadly, for purposes of this removal, Defendant relies solely on data with respect to non-exempt Customer Service Associates, the position held by Plaintiff when he was employed by Defendant. Thus, according to Plaintiff's allegations, Plaintiff contends that putative class members are entitled to recover at least **$3,178,924.32** (*i.e.* $12.67 [average base hourly rate of pay since August 3, 2016] x 3,012,025 [at

least 3,012,025 shifts worked since August 3, 2016] x 0.0833 [5 minutes]).  (Musgrove Decl., ¶ 3.)

### b. Meal Breaks

29. Plaintiff alleges that Defendant failed to provide him and the putative class members with meal breaks.  He claims that, "Plaintiff and the putative class were *regularly* not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked…" (Complaint, ¶ 21 (emphasis added).)  Plaintiff alleges that, "Plaintiff and the putative class would *typically* have to attend to work duties during their meal periods." (Complaint, ¶ 22 (emphasis added).)

30. Under California law, employees who are denied the opportunity to take proper meal periods are entitled to one hour of premium pay for each day that a meal period is not provided.  *Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, *7 (C.D. Cal. 2009).  As a matter of law, meal period claims are properly considered in determining the amount in controversy.  See, e.g., *Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, *4 (E.D. Cal. 2007); *Helm v. Alderwoods Group, Inc.*, 2008 WL 2002511, *8 (N.D. Cal. 2008).

31. Plaintiff also alleges the failure to provide meal periods constitutes unfair competition within the meaning of Business and Professions Code Section 17200. (Complaint, ¶¶ 87, 90, 91.)  The statute of limitations for such a claim is 4 years.  Cal. Bus. & Prof. Code § 17208.  Accordingly, the measure of alleged potential damages for the meal break claim is based on a 4-year limitations period.

32. An assumption of one violation per workweek is proper when a plaintiff alleges that the violation occurs as a result of a systematic practice or that it occurs regularly or consistently.  See *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint where the complaint alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods"); *Mendoza v. Nat'l Vision, Inc.*, No. 19-CV-01485-SVK, 2019 WL 2929745, at *4 (N.D. Cal. July 8, 2019) (concluding that the plaintiff's allegations that the defendant "'regularly' and 'repeatedly' failed

to provide class members with meal and rest breaks" and that the defendant "'maintained and enforced a uniform policy' of failing to pay class members for these missed meal and rest periods" "indicate that [the] [d]efendant reasonably estimate[d] a weekly violation rate for [the] [p]laintiff's [meal and rest break claims]"); *Byrd v. Masonite Corp.*, 2016 WL 2593912, *5 (C.D. Cal. May 5, 2016) (allegations of a systematic practice supports the "assumption that each class member missed one meal period and one rest period per week"); *Garza v. Brinderson Constructors, Inc.*, 178 F.Supp.3d 906, 911 (N.D. Cal. 2016) (assumption of one meal and one rest violation per week reasonable where the complaint alleged that plaintiff "regularly" missed meal breaks); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation once per week"); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (rejecting calculations based on 100% violation rate but accepting the defendant's "more conservative estimate based on one missed break and one missed meal period per pay period"); *Tripp v. Crossmark, Inc.*, No. 13-CV-03480-WHO, 2013 WL 5496550, at *2 (N.D. Cal. Oct. 3, 2013) (finding that the defendant's use of one missed meal and/or rest period for each pay period is a reasonable basis in the controversy calculation).

33. Defendant denies that it failed to provide Plaintiff and members of the putative class with legally-compliant meal breaks. However, conservatively assuming Plaintiff and the putative class members were denied the opportunity to take a compliant meal break during 1 out of every 20 shifts (5% of the time), the total amount of missed meal break premiums would exceed **$1,908,114.67** (*i.e.*, $12.67 [average base hourly rate of pay since August 3, 2016] x 150,601 shifts [5% of 3,012,025 total shifts]). (Musgrove Decl., ¶ 3.)

      **c.**     **Rest Breaks**

34. Plaintiff alleges that Defendant failed to provide hum and the putative class members with rest breaks. He claims that, "Plaintiff and the putative class were *regularly* not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked. . . ." (Complaint, ¶ 21 (emphasis added).) Plaintiff alleges that, "Plaintiff and the

putative class would typically have to attend to work duties during their rest periods." (Complaint, ¶ 22.).

35.  Under California law, employees who are denied the opportunity to take proper rest periods are entitled to one hour of premium pay for each day that a rest period is not provided. *Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, *7 (C.D. Cal. 2009). As a matter of law, rest period claims are properly considered in determining the amount in controversy. *See, e.g.*, *Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, *4 (E.D. Cal. 2007); *Helm v. Alderwoods Group, Inc.*, 2008 WL 2002511, *8 (N.D. Cal. 2008).

36.  Plaintiff also alleges the failure to provide rest periods constitutes unfair competition within the meaning of Business and Professions Code Section 17200. (Complaint, ¶¶ 87, 90, 91.) The statute of limitations for such a claim is 5 years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of alleged potential damages for the rest break claim is based on a 4-year limitations period.

37.  As with meal breaks, an assumption of one violation per workweek is proper when a plaintiff alleges that the violation occurs as a result of a systematic practice or that it occurs regularly or consistently. See, *supra*.

38.  Defendant denies that it failed to provide Plaintiff and members of the putative class with legally-compliant rest breaks. However, conservatively assuming Plaintiff and the putative class members were denied the opportunity to take a compliant rest break during 1 out of every 20 shifts (5% of the time), the total amount of missed rest break premiums would exceed **$1,908,114.67** (*i.e.*, $12.67 [average base hourly rate of pay since August 3, 2016] x 150,601 shifts [5% of 3,012,025 total shifts]). (Musgrove Decl., ¶ 3.)

### d.  Attorneys' Fees

39.  Plaintiff seeks attorneys' fees on behalf of the putative class. (Complaint, Prayer for Relief at ¶ 12.) Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

40. When, as here, a plaintiff seeks to recover attorneys' fees as permitted by California law, the court must consider future attorneys' fees when determining the amount in controversy. *Fritsch v. Swift Transportation Company of Arizona, LLC*, No. 18-55746, 2018 WL 3748667 (9th Cir. Aug. 8, 2018). In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *6-7 (N.D. Cal. 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'")

41. Assuming Plaintiff prevailed on a class-wide basis in this case, the estimated attorneys' fees, based on the foregoing conservative calculations, would be **$1,748,788.42** (*i.e.*, $6,995,153.66 [amount in controversy set forth above] x 25%).

      e. **Summary of Amount in Controversy**

In light of the foregoing, Plaintiff's allegations establish an amount in controversy well in excess of the jurisdictional minimum of $5 million for purposes of removal under CAFA. The minimum amount in controversy is summarized as follows:

| Claim | Amount |
|---|---|
| Unpaid wages | **$3,178,924.32** |

| | |
|---|---|
| Meal break premiums | **$1,908,114.67** |
| Rest break premiums | **$1,908,114.67** |
| Attorneys' Fees | **$1,748,788.42** |
| **Total:** | **$8,743,942.08** |

42. Notably, the aforementioned amounts in controversy *exclude* the potential liability for Plaintiff's overtime, waiting time penalty, wage statement penalty, and business expense reimbursement claims, all of which will only *increase* the amount in controversy. In the event Plaintiff seeks to remand this case, Defendant reserves its right to include calculations with respect to the amount in controversy for each of those claims in its opposition. *Molina v. Pacer Cartage*, 47 F.Supp.3d 1061 (S.D. Cal. 2014).

43. Accordingly, removal of this action under CAFA is proper under 28 U.S.C. §1332(d).

## THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED

44. In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the district in which the action is pending. The Santa Clara County Superior Court is located within the Northern District of California. Therefore, venue is proper in this court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

45. In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

46. In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Santa Clara. Notice of Compliance shall be filed promptly afterwards with this court.

47. As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Certificate of Interested Parties.

## CONCLUSION

For the foregoing reasons, Defendant hereby removes the above-entitled action to United States District Court for the Northern District of California.

Dated: September 17, 2020

Allison C. Eckstrom
Christopher J. Archibald
Sharlene Meno
Bernice Diaz
**BRYAN CAVE LEIGHTON PAISNER LLP**

By:   */s/ Christopher J. Archibald*
        Christopher J. Archibald
Attorneys for Defendant
WALGREEN CO.